

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Rayshawn Kalif Pearson, #296097, ) | Civil Action No. 9:12-1747-TMC-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Richard Turner and Bill Byars, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on December 4, 2012. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on December 6, 2012, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. After receiving an extension of time to respond, Plaintiff filed a response in opposition to the Defendants' motion on February 8, 2013.

The Defendants' motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for
(continued...)

- 1 -

**Background and Evidence**

Plaintiff alleges in his verified Complaint[2] that he was convicted by the Defendant Turner (a disciplinary hearing officer) of "the charge of 823" (fighting), while Turner dismissed the same charge against "Frankie Boiter", even though it "take[s] two to fight . . . ." Plaintiff alleges he went before Turner on December 8, 2011, following which he grieved his conviction but was not granted any relief. Plaintiff alleges that the Defendant Byars, as Director of the SCDC, is responsible for the actions of Turner, his employee. Plaintiff seeks "dismissal of charge," as well as monetary damages. Plaintiff has attached copies of his grievance documents as exhibits to his Complaint. See generally, Verified Complaint, with attached exhibits.

In support of summary judgment in the case, the Defendants have submitted an affidavit from Keith Loveland, who attests that he is a Correctional Officer at the Perry Correctional Institution (PCI), where Plaintiff is housed. Loveland attests that on November 20, 2011 he observed the Plaintiff and another inmate, Frank Boiter, fighting in a dorm. Loveland attests that he broke up the altercation and that, based on his observations of the fight, he charged both inmates with a code violation 823, fighting without a weapon. Loveland has attached to his affidavit a copy of the incident report he completed with respect to this charge. Loveland has also attached a copy of SCDC Policy OP-22.4, containing the definition of an 823 charge on p. 25.[3] Loveland attests that

---

[1](...continued)
all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[3]Defined as "Fighting Without a Weapon: Any group of two or more inmates who engage
(continued...)

- 2 -



Plaintiff did not want him to be present at Plaintiff's disciplinary hearing, and therefore he did not attend the December 8, 2011 disciplinary hearing at issue. See generally, Loveland Affidavit, with attached exhibits.

The Defendant Richard Turner has submitted an affidavit where he attests that he is a Disciplinary Hearing Officer (DHO) with the Department of Corrections, and that he conducted the disciplinary hearing held on December 8, 2011 involving the Plaintiff. Turner attests that pursuant to disciplinary policy, an accusing officer cannot make the determination to send an inmate to a disciplinary hearing simply based on his report. Rather, the accusing officer's report is reviewed by a reviewing supervisor and is then submitted to a responsible authority (either a Major or a Captain). The responsible authority thereafter has nine (9) calendar days from the date of the incident to grade the report and, if applicable, recommend the charge filed against the inmate based upon SCDC policy, the evidence, and the officer's report. Turner attests that in this case, Officer Loveland charged both the Plaintiff and Inmate Boiter with an 823 "fighting without a weapon" charge, and that both were referred to disciplinary hearings.[4]

Turner attests that on December 8, 2011, he received the files of charges before him for that date, and as is his custom, he examined the charges. Turner attests that, prior to beginning the day's hearings, he noted that several charges were Level 3 offenses, which do not require formal

---

[3](...continued)
in a physical altercation". See Exhibit attached to Loveland Affidavit (SCDC Policy OP-22.14, p. 25").

[4]The incident report reflects the Captain's signature at the bottom beside the "Action Taken" block, which is checked to indicate referred for Disciplinary Hearing. This would have been consistent with the procedure attested to by Turner.

- 3 -



disciplinary hearings.[5] These types of charges may be handled through other informal administrative means. Turner attests that when analyzing whether Level 3 offenses are appropriate for a formal disciplinary hearing, he examines each inmate's disciplinary conviction record, and that if an inmate has prior Level 3 convictions or other more serious disciplinary infractions, he will proceed with a disciplinary hearing. If the inmate does not have such convictions, he will refer the charge for administrative handling, or if outside the nine (9) day calendar period for grading the report, he will dismiss the charge. Turner attests that information as to an inmate's race does not appear on an inmate's disciplinary history,[6] and that race is not used as a determining factor in a disciplinary hearing.

Turner attests that because the Plaintiff had prior Level 3 convictions (including a previous 823 charge), he determined that it was appropriate for a formal disciplinary hearing to occur. With respect to Inmate Boiter, Boiter had no prior Level 3 convictions, so he determined at his discretion that Boiter's charge should have been handled administratively, and that because more than nine (9) days had passed since the incident occurred, he dismissed the charge against Boiter. Turner attests that Plaintiff's disciplinary hearing was held later that day, a transcript of which is attached to Turner's affidavit as an exhibit. Turner attests that Plaintiff chose to represent himself at the hearing, and also requested that Officer Loveland not be present. Turner attests that he entered the report of the officer as well as a statement from Inmate David McCall, and that Plaintiff was given the opportunity to testify on his behalf and to ask questions. Turner attests that he

---

[5]The 823 "Fighting Without a Weapon" charge is a Level 3 offense. See SCDC Policy 0P-22.14, p. 25.

[6]Plaintiff's disciplinary "display inmate offense history" and "Offender Summary" are attached to Janice Kenealy's Affidavit, discussed herein, infra. The "Offender Summary" does reflect Plaintiff's race. However, the "inmate offense history" does not.



excluded no witnesses, documentation or evidence.

Turner attests that following the hearing he found Plaintiff guilty of fighting without a weapon based on the evidence and statements submitted, and imposed sanctions pursuant to SCDC Policy OP-22.14. Plaintiff did not lose any good time credits, but was placed on administration segregation for fifty-five (55) days and his canteen, visitation and telephone usage were restricted. See generally, Turner Affidavit, with attached exhibits.

Defendants have also submitted an affidavit from Michael McCall, who was the Warden of PCI at the time of the events at issue. McCall attests that following the December 8, 2011, disciplinary hearing, Plaintiff filed a Step 1 Grievance requesting that his charge be dismissed, which he [McCall] denied because he determined that all procedures were followed during the course of Plaintiff's disciplinary hearing. See generally, McCall Affidavit, with attached exhibit (SCDC Policy/Procedure).[7] The Defendants have also submitted an affidavit from Anthony Padula, Regional Director of the SCDC, who attests that he denied Plaintiff's Step 2 Grievance appeal because the evidence presented at the hearing was sufficient to support Plaintiff's conviction, and there was no evidence of discrimination. See generally, Padula Affidavit, with attached exhibit (Step 2 Grievance Form). Plaintiff also further appealed his conviction to the South Carolina Administrative Law Court, where his appeal was dismissed. See Exhibit [Administrative Law Court's Order of Dismissal].

---

[7]This Court can take judicial notice from previous cases filed in this Court that, under the SCDC Grievance Procedure, all inmate grievances must be filed within fifteen (15) days of the alleged incident, and if a grievance is denied by the Warden (Step 1), the inmate may then appeal the Warden's decision by filing a Step 2 appeal with the Division Director of Operations. See Aloe Creme Laboratories, Inc. v. Francine Co, 425 F.2d 1295, 1296 (5th Cir. 1970); see also Branton v. Ozmint, No. 08-2306, 2009 WL 1457144 at * 2 (D.S.C. May 22, 2009); Jenkins v. South Carolina Dept. of Corrections, No. 05-2800, 2006 WL 1083563 at * 5 (D.S.C. Apr. 18, 2006).



Finally, the Defendants have submitted an affidavit from Janice Kenealy, who attests that she is the Supervisor of Inmate Records for the SCDC. Kenealy has attached to her affidavit a copy of Plaintiff's Central Inmate Record and Disciplinary file. Kenealy attests that Plaintiff has been convicted of approximately twenty-seven (27) disciplinary charges since his incarceration for murder and other charges. See generally, Kenealy Affidavit, with attached exhibit.

As attachments to his response to the Defendants' motion for summary judgment, Plaintiff has submitted as exhibits several of the exhibits already submitted by the Defendants, as well as a copy of Defendants' responses to Plaintiff's "motion to produce and interrogatories".

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the



undersigned finds for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

First, it should be noted that while Plaintiff is entitled to a hearing and/or other procedural safeguards for protected interests, such as the loss of good time credits, he is not actually entitled to a due process hearing every time action is taken to control his behavior. See generally, Wolff v. McDonnell, 418 U.S. 539, 557 (1974); Sandin v. Connor, 515 U.S. 472, 478 (1995)[The "Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner"]; Owens v. Padula, No. 06-3014, 2007 WL 2116440 at * 7 (D.S.C. July 19, 2007). Even though Plaintiff was granted a hearing here, the evidence presented to the Court, which includes grievances noting the results of Plaintiff's disciplinary hearing and other evidence, do not present a genuine issue of fact as to whether Plaintiff was denied any constitutional right, as Plaintiff did not lose any good time credits, and his placement in segregation for fifty-five (55) days with the loss of some privileges does not by itself give rise to a constitutional claim under the facts of this case. Sandin, 515 U.S. at 483-485 [rejecting inmate's claim that placement in disciplinary segregation violated his due process or liberty interests under either the Constitution or state statutes]. Plaintiff has no general constitutional right to placement in any particular prison or to certain privileges, nor does he have any constitutional right to placement in any particular custody classification. See Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994) [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed]; Sandin, 515 U.S. at 486 [holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest]; Beverati v. Smith, 120 F.3d



500 (4th Cir. 1997) [Inmate's confinement in Administrative Segregation did not impose such an atypical hardship so as to implicate a liberty interest]; Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."]; Bazzetta v. McGinnis, 430 F.3d 795, 802-805 (6th Cir. 2005)[regulation banning virtually all visitation for inmates found guilty of two or more violations of major misconduct charge of substance abuse was not a dramatic departure of a typical and significant hardship in relation to ordinary incidents of prison life necessary to implicate a state-created liberty interest, and thus did not rise to level of egregious conduct necessary to violate the guarantees of Fourteenth Amendment's procedural due process clause]; Tarney v. Boles, 400 F. Supp.2d 1027, 1040 (E.D. Mich. 2005)[inmate's loss or restriction of telephone privileges for disciplinary reasons is not considered an atypical significant hardship, even when the disciplinary charges are allegedly false, and therefore does not implicate a liberty interest protected by due process]; Papadakis v. Director, No. 08-670, 2010 WL 1753358 at * 2 (E.D.Tex. Apr. 8, 2010)["[B]eing placed in disciplinary confinement, losing commissary and property privileges for thirty days, and remaining at the same time earning class are not sanctions which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."] (quoting Sandin, 515 U.S. 472); Ordaz v. Lynaugh, No. 93-4290, 1994 WL 144882, at * * 2 (5th Cir. 1994)["Wolff . . . does not determine the procedural requirements for disciplinary action such as restriction of commissary privileges."].



Further, with respect to the disciplinary hearing itself, in the prison disciplinary setting an inmate is entitled to only a minimal standard of due process, and if the following requirements are satisfied, prison officials have met this minimal standard:

1. Advance written notice of the charges;

2. A written statement, citing the evidence on which the decider relied and the reasons for the action taken; and

3. The right by the inmate/defendant to call witnesses and present documentary evidence, if institutional safety will not be jeopardized.

Wolff v. McDonnell, 418 U.S. 539, 563-576 (1974); Luna v. Pico, 356 F.3d 481, 487-488 (2d Cir. 2004). Here, the evidence clearly shows, and indeed Plaintiff does not dispute, that he was given advance written notice of the charges, the right to call witnesses and present evidence, and that he was advised of the decision and the reasons therefore. See Disciplinary Report and Hearing Record. The evidence also shows that Plaintiff participated in the hearing and presented his version of what had happened, as well as what evidence was relied on by the DHO and the basis for his decision. Id.

To sustain a conviction in the institutional setting, the fact finder need only show that some evidence existed to support his conclusion. Superintendent, Massachusetts Correction Institution v. Hill, 472 U.S. 445, 456-457 (1985); see Piggie v. Cotton, 344 F.3d 674, 677 (7th Cir. 2003). The Supreme Court in Superintendent evidenced a distaste for allowing the federal courts to review the outcome of prison disciplinary actions, and under the applicable caselaw a disciplinary decision is sufficient to pass scrutiny under the due process clause if it is supported by "some" evidence. Id; Baker v. Lyles, 904 F.2d 925 (4th Cir. 1990); Sales v. Murray, 862 F.Supp. 1511



(W.D.Va. 1994); McClung v. Shearin, No. 03-6952, 2004 WL 225093 (4th Cir. Feb. 6, 2004); see also Chevron U.S.A. v. Natural Res. Def. Cil., Inc., 467 U.S. 837, 844 (1984)[Agency's decisions are not to be second-guessed by federal courts unless they are arbitrary, capricious, or manifestly contrary to the statute]. In this case, evidence from the reporting employee was that he observed the Plaintiff and another inmate fighting in a dorm, following which he charged both inmates with charge No. 823, fighting without a weapon, pursuant to SCDC policy. The conviction in this case is clearly supported by "some" evidence. Therefore, to the extent Petitioner is asserting that he did not receive due process in his disciplinary proceedings, his claim is without merit.

To the extent Plaintiff claims that his conviction was based on racial discrimination (Plaintiff is African American, while both the Defendant Turner and the Inmate whose charges were dismissed, Boiter, are white), Plaintiff has provided no evidence to support this general and conclusory allegation. Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]. Plaintiff generally asserts that the Defendant disciplinary hearing officer was biased against him, but offers no more than his own conclusory and self serving assertion that this was the case. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Jaffe v. Federal Reserve Bank of Chicago, 586 F.Supp. 106, 109 (N.D.Ill. 1984) [A plaintiff "cannot merely invoke his race in the course of the claim's narrative and automatically be entitled to pursue relief"]. Turner attests that Plaintiff's charge proceeded to a disciplinary hearing while Boiter's did not because Plaintiff had prior Level 3 convictions while Boiter had none, and that where an inmate has no prior Level 3 convictions he refers the charges for administrative handling, or if more than nine (9) days from the date of the incident, dismissal. Plaintiff has presented no evidence to show



that this is not Turner's customary way of handling such situations, nor has he presented any evidence to show that Boiter also had prior Level 3 convictions or the same type of conviction history as he did. This claim is without merit. See Chevron U.S.A., 467 U.S. at 844 [Agency's decisions are not to be second-guessed by federal courts unless they are arbitrary, capricious, or manifestly contrary to the statute]; Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986)["(Plaintiff's) conclusory allegations of...discrimination are not sufficient to establish liability."]; Papasan, 478 U.S. at 286.

Finally, Plaintiff also argues that the SCDC disciplinary policy did not allow Turner the discretion to refer a charge for administrative handling, as Turner attests he routinely does as part of his review of files.[8] However, even assuming Plaintiff is correct that there is no formal prison policy sanctioning this procedure, Plaintiff has still failed to present any evidence that race was a motivating factor in Turner's decision; May v. Baldwin, 895 F.Supp. 1398, 1410 (D.Or. 1995)["Though prison authorities may not discriminate against inmates on the basis of their race, plaintiff offers no evidence that he has been mistreated by prison officials because he is black."](internal citation omitted), aff'd, 109 F.3d 557 (9th Cir. 1997), cert. denied, 522 U.S. 921 (1997); while a technical violation of a prison policy or procedure, even assuming one occurred in this case, is not in and of itself a compensable claim in a § 1983 action. Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]); see also Scott v. Hamidullah, No. 05-3027, 2007 WL 904803 *5 n.6 (D.S.C. Mar. 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)); Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12

---

[8]Cf. Exhibit (SCDC Policy OP-22.14, pp. 3-4).



- 11 -

(D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that Defendants did not follow their own policies fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing Riccio, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]).  This claim is therefore without merit.

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 21, 2013
Charleston, South Carolina

- 12 -



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



- 13 -